✓ FILED ___ ENTERED
____ LOGGED _____ RECEIVED
10:29 am, Aug 30 2023
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ______________Deputy

JDM 7.17.23



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Paul E. Budlow*
*Assistant United States Attorney*
*Paul.Budlow@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4917*
*MAIN: 410-209-4800*
*FAX: 410-962-3091*

July 17, 2023

Joseph Murtha
Rice, Murtha & Psoras, LLC
1301 York Road, Suite 200
Lutherville, Maryland 21093-6005

Re: *United States v. Adam Nettina,*
Case No. GLR-23-134

Dear Mr. Murtha:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Adam Nettina (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland and the Civil Rights Division of the Department of Justice (together "the Government"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by July 28, 2023, it will be deemed withdrawn. The terms of the Agreement are as follows:

## Offense of Conviction

1. The Defendant agrees to plead guilty to Count One of the Indictment, which charges the Defendant with making threats transmitted by interstate communication, in violation of 18 U.S.C. § 875(c), and choosing his victim because of actual or perceived gender, sexual orientation, or gender identity. The Defendant admits that the Defendant is, in fact, guilty of the offense and will so advise the Court.

## Elements of the Offense

2. The elements of Count One to which the Defendant has agreed to plead guilty, and which the Government would prove if the case went to trial, are as follows:

On or about March 28, 2023, in the District of Maryland:

a. The Defendant knowingly and willfully transmitted a message in interstate commerce;

b. The Defendant transmitted the message for the purpose of issuing a threat or with knowledge that the message would be viewed as a threat; and

c. The message contained a true threat to injure the person of another.

d. Special Finding: The Indictment includes a Special Finding that the Defendant intentionally selected the victims of his threat because of the actual and perceived gender, gender identity, and sexual orientation of the people who work at and are assisted by a lesbian, gay, bisexual, transgender, and queer (LGBTQ) advocacy group and political lobbying organization based in Washington, D.C.

## Penalties

3. The parties agree that the maximum penalties provided by statute for the offense to which the Defendant is pleading guilty are as follows:

| COUNT | STATUTE | MANDATORY MINIMUM IMPRISONMENT | MAXIMUM IMPRISONMENT | MAXIMUM SUPERVISED RELEASE | MAXIMUM FINE | SPECIAL ASSESSMENT |
|---|---|---|---|---|---|---|
| 1 | 18 U.S.C. § 875(c) | n/a | 5 years | 3 years | $250,000 | $100 |

a. Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

b. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

c. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

d. Special Assessments: The Court must order the Defendant to pay a special assessment pursuant to 18 U.S.C. § 3013.

e. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

f. Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

g. Collection of Debts: If the Court imposes a fine or restitution, the U.S. Attorney's Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes the U.S. Attorney's Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by the Government.

## Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, the Government, and the Court all agreed.

b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

e.      If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

g.      If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

## Advisory Sentencing Guidelines Apply

5.      The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Factual and Advisory Guidelines Stipulation

6. The Government and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein. This Office and the Defendant further agree to the following Sentencing Guidelines:

Count One: Threats Transmitted by Interstate Communication to Advocacy Organization:

a. The base offense level for a violation of 18 U.S.C. § 875(c) is 12, pursuant to U.S.S.G. § 2A6.1.

b. Pursuant to U.S.S.G. § 3A1.1(a), there is a 3-level increase, because the Defendant intentionally selected the victim(s) of his threat as the object of the offense because of the actual and perceived gender, gender identity, or sexual orientation of any person. The defendant admits that he was so motivated, and the parties agree that Attachment A, including the Defendant's sworn admission establishes such facts beyond a reasonable doubt and agree that the Court should make such a determination at sentencing. [Subtotal: 15.]

7. The Government and the Defendant agree that the following sentencing guidelines factors are in dispute: whether there should be an increase of three (3) levels pursuant to U.S.S.G. § 3D1.4A based on the commission of two additional offenses, set out below in Groups Two and Three.

a. The Government contends that the Statement of Facts attached as Attachment A to this plea agreement specifically establishes the commission of additional offenses than those to which the Defendant has agreed to plead guilty. The Government contends that the Statement of Facts establishes that the Defendant committed two additional violations of 18 U.S.C. § 875(c), and that pursuant to U.S.S.G. § 1B1.2(c), those additional offenses shall be treated as if the Defendant had been convicted of additional counts charging those offenses.

b. The Defendant does not dispute the stipulated facts attached as Attachment A; rather, the Defendant disputes that these facts establish violations of 18 U.S.C. § 875(c).

c. The Government contends that if the Court determines that the Statement of Facts establishes the commission of additional violations of 18 U.S.C. § 875(c), the following Sentencing Guidelines apply:

Government's Calculation of Group Two: Threats Transmitted by Interstate Communication to a Maryland State Delegate (First Additional Admitted Conduct):

i. The base offense level for a violation of 18 U.S.C. § 875(c) is 12, pursuant to U.S.S.G. § 2A6.1.

ii. Pursuant to U.S.S.G. § 3A1.1(a), there is a 3-level increase, because the Defendant intentionally selected the victim(s) of his threat as the object of the offense because

of the actual and perceived gender, gender identity, or sexual orientation of any person. The Government contends that Attachment A establishes such facts and that the Court should make such a determination at sentencing. [Subtotal: 15].

Government's Calculation of Group Three: Threats Transmitted by Interstate Communication to a Virginia State Delegate (Second Additional Admitted Conduct):

iii. The base offense level for a violation of 18 U.S.C. § 875(c) is 12, pursuant to U.S.S.G. § 2A6.1.

iv. Pursuant to U.S.S.G. § 3A1.1(a), there is a 3-level increase, because the Defendant intentionally selected the victim(s) of his threat as the object of the offense because of the actual and perceived gender, gender identity, or sexual orientation of any person. The Government contends that Attachment A establishes such facts and that the Court should make such a determination at sentencing. [Subtotal: 15].

Government's Calculation as to Grouping:

v. Pursuant to U.S.S.G. § 3D1.2 and § 2A6.1 App. Note 3, multiple 18 U.S.C. § 875(c) counts involving different victims are not to be grouped. There are 3 groups of an equally serious offense level (15), for a total of 3 units. Thus, pursuant to U.S.S.G. § 3D1.4, 3 levels are added to the offense level. [Subtotal: 18].

8. If the Court determines that Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to the operation of § 3E1.1(a) is 16 or greater, the government will move for an additional one-level reduction in offense level pursuant to § 3E1.1(b) based on Defendant's timely notification of his intention to enter a guilty plea, as long as the Defendant continues to accept responsibility for his actions. The Government may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant makes statements or engages in conduct that is inconsistent with the acceptance of responsibility, such as if he: (i) fails to admit each and every item in the factual stipulation; (ii) denies or minimizes his involvement in the offense; (iii) gives conflicting statements about his involvement in the offense; (iv) is untruthful with the Court, the Government, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; (viii) denies the criminal nature of his conduct or (ix) violates this Agreement in any way. [Government's Anticipated Total: 15] [Defendant's Anticipated Total: 12].

9. There is no agreement as to the Defendant's criminal history, and the Defendant understands that his criminal history could alter his guidelines range.

10. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

Obligations of the Parties

11. At the time of sentencing, the Government and the Defendant ("the parties") reserve the right to advocate for a reasonable sentence considering any appropriate factors under 18 U.S.C. § 3553(a).

12. At the time of sentencing, the parties will recommend, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), that the Court recommend to the Bureau of Prisons that the Defendant receive mental health treatment during any period of his incarceration.

13. At the time of sentencing, the parties will recommend, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), the following:

a. That the Court impose a three-year term of supervised release following any sentence; and

b. That the Court include the following conditions of supervised release: (a) regularly scheduled individual cognitive behavioral therapy; (b) ongoing assessment and management of any applicable psychiatric medications; (c) anger management; (d) substance abuse evaluation and treatment; (e) limited access to the internet and social media based on the discretion of the Defendant's behavioral therapist and/or treating mental health physician; (f) a prohibition against possession of any firearm or other dangerous weapon; and (g) a stay-away no-contact order as to all victims, including employees of the advocacy organization and the Maryland State Delegate, the Virginia State Delegate, and members of their staffs.

14. The parties reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that the Government or the Defendant deem relevant to sentencing, including the conduct that is the subject of any counts of the Indictment.

Waiver of Appeal

15. In exchange for the concessions made by the Government and the Defendant in this Agreement, the Government and the Defendant waive their rights to appeal as follows:

a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

b. The Defendant and the Government knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term

of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from the Government or any investigating agency.

Forfeiture

16. a. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

b. Specifically, but without limitation on the Government's right to forfeit all property subject to forfeiture as permitted by law, the Defendant agrees to forfeit to the United States all of the Defendant's right, title, and interest in the following items that the Defendant agrees constitute money, property, and/or assets derived from or obtained by the Defendant as a result of, or used to facilitate the commission of, the Defendant's illegal activities.

c. The Defendant agrees to consent to the entry of orders of forfeiture for the property described herein and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding forfeiture during the change of plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment.

d. The Defendant agrees to disclose all assets and sources of income, to consent to all requests for access to information related to assets and income, and to take all steps necessary to pass clear title to the forfeited assets to the United States, including executing all documents necessary to transfer such title, assisting in bringing any assets located outside of the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are made available for forfeiture.

e. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

Restitution

17. Pursuant to 18 U.S.C. § 3663(a)(3), 18 U.S.C. § 3663A(a) & (b), and 18 U.S.C. § 3664, the Defendant agrees to make full restitution to all victims of his offenses as to all counts charged. Further, pursuant to 18 U.S.C. § 3664(d)(5), the Defendant agrees not to oppose bifurcation of the sentencing hearing if the victims' losses are not ascertainable prior to sentencing. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and the Government may seek to be relieved of its obligations under this Agreement.

18. The total amount of restitution shall be due immediately and shall be ordered to be paid forthwith. Any payment schedule imposed by the Court establishes only a minimum obligation. The Defendant will make a good faith effort to pay any restitution. Regardless of Defendant's compliance, any payment schedule does not limit the Government's ability to collect additional amounts from the Defendant through all available collection remedies at any time. The Defendant further agrees that the Defendant will fully disclose to the Government, the probation officer, and to the Court, subject to the penalty of perjury, all information (including but not limited to copies of all relevant bank and financial records) regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and the Government may seek to be relieved of its obligations under this Agreement.

Defendant's Conduct Prior to Sentencing and Breach

19. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, the Government, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

20. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) the Government will be free from its obligations under this Agreement; (ii) the Government may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, the Government will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that the Government is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In

that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

Court Not a Party

21. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power under Rule 11(c)(5) to reject a plea agreement entered into under Rule 11(c)(1)(C). Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to whether the Court will accept the plea agreement entered into under Rule 11(c)(1)(C). The Defendant agrees that no one has made such a binding prediction or promise.

Entire Agreement

22. his letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between the Government and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and the Government other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Erek L. Barron
United States Attorney

Paul E. Budlow
Assistant United States Attorney

Tara Allison
Trial Attorney
Civil Rights Division

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

7/23/2023
Date

Adam Nettina

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

7/23/2023
Date

Joseph Murtha
Counsel for Defendant

**Attachment A**

*The undersigned parties hereby stipulate and agree that the following facts are true and accurate, and that if this matter had gone to trial, the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.*

Adam Michael Nettina ("Nettina"), age 34, is a resident of West Friendship, Maryland. As described below, on March 28, 2023, Nettina used a mobile phone and the internet to transmit a threat to injure individuals. Nettina targeted the victims because of their support for lesbian, gay, bisexual, transgender, and queer (LGBTQ) individuals, rights, and causes.

**Threat to Advocacy Organization (Count One)**

On March 28, 2023, Nettina transmitted a true threat in interstate commerce. In particular, Nettina used his cellular telephone to place a call from his workplace in Maryland to the Washington, DC offices of an LGBTQ advocacy group and political lobbying organization. Nettina left a voicemail threatening to kill LGBTQ individuals. The voicemail was, in part, in reaction to a school shooting that had occurred the day before in Nashville, Tennessee, in which an individual who was subsequently identified in the press as being transgender entered a Christian elementary school with multiple guns and shot and killed three children and three adults. Nettina, angry about the violence carried out by a transgender shooter, left the voicemail the following day. gm

Before leaving the voicemail that is the subject of the indictment, Nettina called the organization and left the following voicemail at 11:17 pm:

> *Yeah, so you fucking think you can come and up and show up at our schools, kill little kids, and fucking just ignore it? Why don't you show up at my house I'll put a bullet in your head. You come and try it. You come and try it. You fucking take a shot at our kids, I will fucking cut your head off you piece of fucking shit.*

At 11:21pm, Nettina left the following voicemail:

> *You guys going to shoot up our schools now? Is that how it's going to be? You just gonna to kill little kids. You're just going to slaughter fucking little kids. Let me tell you something, we're waiting, we're waiting. And if you want a war, we'll have a war. And we'll fucking slaughter you back. We'll cut your throats. We'll put a bullet in your head. We're not going to give a fuck. You started this bullshit. You're going to kill us? We're going to kill you ten times more in full.*

Nettina left this voicemail for the purpose of issuing a threat and with the knowledge that the voicemail would be viewed as a threat. Nettina intentionally selected the advocacy organization as a target of his message because of the actual and perceived gender, gender identity, and sexual orientation of the people who work at and are assisted by the organization.

Additional Messages Sent by Nettina:

**Messages to a Maryland State Delegate (Government Contends Group Two)**

On March 31, 2022, a Maryland State Delegate posted on social media: "I'm sending my love and support to all my trans friends on this #TransDayOfVisibility. You are seen, you are valid, and you are loved. Don't let anyone ever tell you differently!"

Nettina sent the delegate a Facebook message later that same day. The message stated:

*FYI—I've begun the formal process of getting you excommunicated. If you're going to go to war against the Church in the policies you support, which you clearly do, I'm going to make sure you are NEVER welcomed with open arms in another Catholic Church again.*

On November 8, 2022, the evening that the delegate was elected to the Maryland House of Delegates, Nettina transmitted a communication in interstate commerce. In particular, Nettina used the internet to send the delegate the following Facebook messages[1] at 11:39 p.m.:

*Cubt ass bitch baby killer. I hope you get killed on a Kar accident with your shut cunt wife*

*Fuck you you little bitch*

*Better watch out*

*Baby killing terrroist. Enjoy hell*

*You're going sooner than you think*

**Email to a Virginia State Delegate (Government Contends Group Three)**

On October 13, 2022, an online news story was published about an interview a Virginia State Delegate gave in which she advocated for the prevention of abuse towards transgender children.

Two days later, on October 15, 2022, at 3:38 p.m., Nettina used the internet to send the following email[2] in interstate commerce to the delegate's press email account:

---

[1] The Government submits that the facts establish that Nettina sent the messages for the purpose of issuing a threat or with knowledge that the messages would be viewed as a threat, and that Nettina intentionally selected the delegate as the target recipient of his message because of the actual and perceived gender, gender identity, and sexual orientation of the people and constituents for whom the delegate has expressed support.

[2] The Government submits that the facts establish that Nettina sent the email for the purpose of issuing a threat or with knowledge that the email would be viewed as a threat, and that Nettina intentionally selected the delegate as the target recipient of his message because of the actual and perceived gender, gender identity, and sexual orientation of the people and constituents for whom the delegate has expressed support.

*The delegate is a terrorist. You are a terrorist.*

*You deserve to be shot and hung in the streets.*

*You want to come after people? Let's go bitch.*

Providing additional context for the above, Nettina sent the following email to another email of the delegate two minutes later:

*Terrorist bitch.*

*You want to come after people you extremist cunts?*

*Your faggot ass campaign staff is welcome to try.*

Nettina intentionally selected the delegate and her campaign staff as the recipient of his email because of the actual and perceived gender, gender identity, and sexual orientation of the people and constituents for whom the delegate has expressed support.

I have reviewed the foregoing Statement of Facts with my attorney, understand it, agree with it, and do not wish to change any part of it. I further understand that it is included as a part of my plea agreement with the Government in this case.

Adam Nettina

I am the attorney for the Defendant. I have carefully reviewed every part of this Statement of Facts with him. To my knowledge, his decision to sign it is an informed and voluntary one.

Joseph Murtha
Counsel for Defendant