IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | | |
|---|---|---|
| UNITED STATES OF AM ERICA | * | |
| v. | * | Criminal No. GLR-23-134 |
| ADAM MICHAEL NETTINA | * | |

        *     *     *     *     *     *     *

## DEFENDANT'S STATEMENT IN AID OF SENTENCING

Now comes the defendant, Adam Michael Nettina, by and through undersigned counsel and submits this document, with the accompanying attachments, in support of the arguments to be presented by the defendant at the time of sentencing..The substance of the defendant's supplication is a request that the Court consider that a period of time served as a sufficient sentence based on the incarceration that has been served by Mr. Nettina at the Chesapeake Dementia Facility, applying variances for Mr. Nettina's lifelong history of struggling with mental health issues, exacerbated by his abuse of alcohol, as well as the absence of any prior criminal history. For Mr. Nettina his arrest in this matter has been a turning point that very well may have saved him from ongoing challenges caused by the pathos of mental illness amplified by alcohol abuse.. Although the government takes a position that words that are not prohibited should be punished, it is the plea of undersigned counsel that the Court recognize that rehabilitation accomplished through community supervision is an appropriate disposition. The totality of the circumstance which led up to Mr. Nettina's committing the charged offense, the conditions of detention for approximately the last seven months, and the need for rehabilitative measures rather than extended incarceration offer the Court an opportunity to punish Mr. Nettina

1

without imposing a sentence within guideline range (as calculated by the government) or a sentence within the guideline range as proposed by the defendant. This permits the Court to consider a variance that recognizes that much of Mr. Nettina's motivation for his criminal conduct was closely related to mental health and alcohol abuse.. The defendant requests that the Court consider this information in fashioning a sentence below the sentence recommended by the government.

<u>INTRODUCITON</u>

As the Court is aware, Mr. Nettina is being prosecuted in a single count indictment for making a threat transmitted by interstate communication. Specifically, on March 28, 2023, Mr. Nettina left a voicemail message at the Human Rights Campaign. The message was a true threat, one that was vocalized, but never acted upon. Undersigned counsel in no way minimizes the nature of the offense, and the fear that it caused to the individuals who work for that agency. That being said, and upon having an opportunity to review the government's sentencing memorandum, undersigned counsel believes it is important to focus on what sentence is sufficient but not greater than necessary for the offense charged. The government in choosing to prosecute Mr. Nettina has identified communications to one agency and two individuals, and has indicated that pursuant to the plea agreement will "advocate for a reasonable sentence". The sentencing memorandum offered by the government focuses much of its attention on conduct that has not been charged, nor has been identified as relevant conduct. Approximately 14 pages of the government's 27 page sentencing memorandum focuses on communication between Mr. Nettina and his parents. Mr. Nettina's words may be harsh, and may be unacceptable, but for the government to request a sentence that greatly exceeds the proposed sentencing guidelines is an

abuse of discretion, as well as being arbitrary and capricious. Undersigned counsel does not condone the nature of the text messages and telephone conversations that the government uses as most of the support for their request to exceed the sentencing guidelines. In Texas v. Johnson, 491 U.S. 397 (1989), the Supreme Court stated:

> If there is a bedrock principle underlying the First Amendment, it is that the Government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable.

While any form of hateful speech may feel threatening, only speech that commentates or incites a serious intent to harm is not protected under the First Amendment. This speech must be directed toward a particular individual or a group of specific individuals and does not include hyperbole, jest or emotional rhetoric. In addition, the speaker must have the means, opportunity and intent on carrying the threat out. Whether or not something constitutes a true threat requires close examination of the intent and impact of the statement. Speech that is unpopular, offensive, or even abhorrent is protected by the First Amendment. This includes speech that is political in nature, racist, sexist or otherwise unseemly.  The government has elected to "bolster" their request for a sentence two times greater than the top of their calculation of the guideline range in support of its outrage at Mr. Nettinas's words that are protected speech. In fact, the speech was exchanged between his parents and him, and but for the government's legally authorized invasive axquisition of those words, they would never have been made public. No doubt the words are offensive and disagreeable, but it is the hope of undersigned counsel that the personalization of the various comments that are offered by the government do not interfere with the overarching goal to impose a sentence that is sufficient but not greater than necessary.

The defendant agrees with the government's assessment of the procedural background.

## THE PLEA AGREEMENT

The defendant agrees with the government's assessment of the factual background, as well as the plea agreement summary. As noted throughout the plea letter, and this memorandum, the defendant does not agree that the mEssages to the Maryland State delegate and the Virginia State delegate were true threats.

On August 30, 2023, Mr. Nettina appeared before the Court and tendered a guilty plea to the single count indictment filed in this matter. Specifically, Mr. Nettina pled guilty to making threats transmitted by interstate communication, in violation of 18 U.S.C. § 875 ( c), and choosing his victim because of actual or perceived gender, sexual orientation, or gender identity. Mr. Nettina accepts responsibility for the call that he placed to the Human Rights Campaign (HRC) on March 28, 2023, and agrees that call was a true threat.

The terms of the plea agreement are set forth in the plea letter submitted to the Court on August 30, 2023. Mr. Nettina accepts the calculation of the sentencing guidelines as to the voice mail message left at the offices of HRC on March 28, 2923, and as stated in the plea letter on pages 5 and 6. Although the defendant does not dispute the stipulated facts attached as Attachment A of the plea letter, Mr. Nettina does dispute that the stipulated facts establish additional violations of 18 U.S.C. § 875 ( c). As set forth on pages 5 and 6 of the plea letter, Mr. Nettina agrees that the base offense level for a violation of 18 U.S.C. § 875 ( c) as set forth in U.S.S.G. § 2A6.1 is 12. Mr. Nettina further agrees that pursuant to U.S.S.G. § 3A1.1(a) there is a 3 level increase because Mr. Nettina intentionally selected the victim(s) of the threat as the object of the offense because of the actual and perceived gender, gender identity, or sexual orientation of any person.  The defendant understands that the government will seek an additional 3 level

4

upward adjustment, alleging that the stipulated facts provide a basis for the Court to find that Mr. Nettina committed two additional violations of 18 U.S.C. § 875( c).  As noted, Mr. Nettina objects to the additional proposed 3 level upward adjustment.

<u>PRESENTENCE REPORT</u>

Undersigned counsel and the defendant have reviewed the presentence report prepared in this matter. The information contained in the presentence report is, for the most part, accurate, with a limited number of exceptions noted below, and the dispute related to the guideline calculation that is noted above in the summary of the terms of the plea agreement.,

As to exceptions, corrections or objections to the Presentence Report, please note the following:

<u>Personal and Biographical Information</u>

On page 1 of the report Mr. Nettina requests that the date of initial detention be changed to March 31, 2023. Mr. Nettina was arrested in Carroll County, Md. on that date and then transported to the Woodlawn Precinct of the Baltimore County Police Department, where he was detained until he was presented to the Court on April 3, 2023, for his initial appearance.

On page 3 of the report, Mr. Nettina requests that his legal address be noted as 13564 Davinci  Lane, Herndon, VA 20171. He was temporarily residing at the West Friendship, Maryland address (his parents' address) at the time he was arrested.

On page 10, number 60, Mr. Nettina requests that the word "romantic" be stricken and replaced with friendly and supportive to describe the relationship.

On page 11, number 64, Mr. Nettina requests that the number of tattoos be corrected to "two" tattoos, which are located on his right and left forearms.

On page 12, number 71, Mr. Nettina requests that the last sentence be corrected to note that Mr. Nettina's binge drinking, rather than anorexia, was out of control.

On page 12, number 73, first line, Mr. Nettina requests that the latter date be changed to December, 2022, rather than January, 2023.

On page 21, number 81, Mr. Nettina requests that the length of time he was in graduate school be corrected to 1 ½ years rather than 1 year.

<u>Sentencing Guidelines Information</u>

To err on the side of caution, undersigned counsel sets forth certain objections to the calculation of the guidelines, but acknowledges that on page 15, paragraph 96, there is a recognition that the increase in the guideline calculation does not apply if the Court determines that the defendant did not commit two additional offenses. So, to be clear about the objections to the guidelines as calculated, the defendant notes the following objections. On page 7, number 22, the defendant objects to the application in this case  of the conclusion that "a plea agreement containing a stipulation that specifically establishes the commission of additional offenses shall be treated as if the defendant has been convicted of additional counts charging those offenses." As noted on page 5, 7(b), "[T]he Defendant does not dispute the stipulated facts attached in Attachment A, rather, the Defendant disputes that these facts establish violations of 18 U.S.C. § 875( c). As such, the defendant excepts to the paragraphs 20 through 41 on pages 8 and 9, For reasons that are set forth in the body of this memorandum, the defendant asserts that the adjusted offense level, with acceptance of responsibility, should be 13, and not 15. Further, based on the continuing objection to the calculation of the guidelines based on an adjusted offense level of 15, with a criminal history of I, the defendant objects to paragraph 94 on page 14, wherein the

guideline range is proposed to be 18 months to 24 months. . Based on this objection, the defendant proposes that the guideline provision should be based, at most, a level 13, criminal history 1,resulting in a range of 12 months to 18 months

In regard to the government's request to find that an additional upward adjustment of 3 levels is appropriate because of the uncharged conduct, Mr. Nettina requests that the Court conclude that communications with the Maryland State delegate and Virginia State delegate are factually insufficient for the Court to find that those communications are "a true threat to injure the person or another" and that the communications to the noted politicians satisfy the factual requirement that the defendant intentionally selected the victims of his threat because of the actual and perceived gender, gender identity, and sexual orientation of any person.

<u>Maryland State Delegate</u>

Undersigned counsel is aware that the Court has been provided a letter from the Maryland State delegate. In that letter the delegate provides information not associated with the communications that the government relies upon in its effort to support a request for an upward adjustment for the communication to the delegate. In fact, it appears the delegate obtained information from social media posts of Mr. Nettina that were never directly communicated to the delegate that he uses as a bit of an amplifier to enhance the messages contained in the plea letter. Undersigned counsel, nor Mr. Nettina, are arguing that the statements were anything but inappropriate, but not a basis for the Court to make a factual finding that an upward adjustment is appropriate. The delegate and Mr. Nettina were classmates at Mount Saint Joseph High School (MSJ). As they moved forward with their lives they periodically communicated through a Facebook group of MSJ alumni. It was through this communication that the political differences

of the delegate and Mr. Nettina became obvious, and caused the conflict between the two.

The issue that the Court must decide is whether the government has provided sufficient evidence to convince the Court that (a) the defendant knowingly and willfully transmitted a message in interstate commerce; (b) the defendant transmitted the message for the purpose of issuing a threat or with knowledge that the message would be viewed as a threat, and ( c) the message contained a true threat to injure the person or another.

In regard to the special finding, the Court must determine the defendant intentionally selected the victims of the direct threat because of the actual and perceived gender, gender identify, and sexual orientation of persons.

The messages that are the subject of this argument are set forth in Attachment A of the plea letter, and are set forth in the government's sentencing memorandum. No case law cited by the government has explicitly announced what is a "true threat." True threats constitute a category of speech - like obscenity, child pornography, fighting words, and the advocacy of imminent lawless action - that is not protected by the First Amendment and that can be prosecuted under state and federal laws. The speaker need not actually intend to carry out the threat, but the prosecution must prove that he or she intended to communicants a threat. Cases that have reached the Supreme Court in recent years have involved threats made over social media.

After some disagreement among lower appellate courts about the level of intention needed, the Supreme Court in 2023 in <u>Counterman v Colorado</u>, 600 U.S. 68 (2023), adopted the rule that speech is not protected if the speaker "consciously disregarded a substantial risk that his communications would be viewed as threatening violence." In <u>Counterman</u>, Colorado convicted

8

Billy Raymond Counterman of stalking after he sent numerous disturbing messages over years to a female musician using Facebook. However, he was found guilty under an "objective standard" which turns on how a reasonable person would view a statement in context, and does not rely on proof of the speaker's awareness. The Supreme Court vacated the conviction and returned the case back to the lower courts for further proceedings that would include showing Counterman's state of a mind, a "subjective standard."  The court decided the subjective standard should be set at a level of "recklessness" on behalf of the speaker and noted this standard had a lower threshold than establishing an intent to do harm or knowing that the communication would do harm. Essentially, the court ruled that the First Amendment protection of free speech requires that prosecutors show that he was aware of the threatening nature of his communication. Justice Elena Kagan, in the 7-2 ruling, wrote that the state must require some level of culpable mental state for commendation to be a true threat, but that a low level - recklessness in making the threat - is sufficient. Under a recklessness standard the state must prove that the person "consciously disregarded a substantial risk that his communication would be viewed as threatening violence." In its opinion the Supreme Court reasoned prosecutions for speech without establishing that a speaker had some consciousness of the crime could have a chilling effect on other speech .

A review of the noted statement made by Mr. Nettina shows an absence of a direct true threat. The initial statement clearly offers no threat of violence, but rather, the possibility of being excommunicated from the Catholic Church. The message is offensive, and problematic, but it is not a true threat.

In looking at the second statement it is clear that Mr. Nettina is wishing ill will upon the State delegate, and his wife. Offensive, inappropriate, and "slurred" (as demonstrated by the

9

misspelling and somewhat incoherent nature of the message) language is communicated to the delegate. In applying the <u>Counterman</u> standard, the words expressed do not constitute a true threat.

<u>Virginia State delegate</u>

Undersigned counsel adopts and incorporates the information and argument set forth in addressing the Maryland State delegate message, and applies the same argument regarding the words expressed. At no time is there a "true threat" directed to the delegate. Again, inappropriate and offensive language is expressed, but it does not satisfy the standard set forth under <u>Counterman.</u>

Additionally, as to both of th delegates, it is a far stretch that the government makes in assuming that the communications of Mr. Nettina are ain any way associated with his intentionally selecting either delegate because of the actual and perceived gender, gender identity, and sexual orientation of the person. In fact, there is absolutely no dialogue that would suggest that either statement was sent to either delegate because of their actual and perceived gender, gender identity, and sexual orientation.

<u>VARIANCES & ADJUSTMENTS</u>

On April 27, 2023, the Untied States Sentencing Commission submitted to Congress an amendment to the federal sentencing guidelines often referred to as "Amendment 821" or the "2023 Criminal History Amendment." The proposed amendment takes effect on November 1, 2023. What has been decided regarding this amendment is that there will be a delayed retroactive application. The retroactive application carries a three month delay. The Commission requires any reduced sentences under Amendment 821 to have an effective date of February 1, 2024, or

later. This delay in the retroactive applicaiton ensures the Bureau of Prisons can prepare for earlier releases.  Although the date of retroactive application is in February, 2024, the applicaiton of the 2 level downward adjustment is applicable in this case, wherein the sentencing date occurs after the enactment of the amendment. In the event that the governemnt argues that it doesn't apply, the Court certainly can consider the intent of the Sentencing Commission and determine that the intent of the Sentencing Commission, and with only several months separating the sentencing date in this matter from the retroactive application date, and determine that a variance of 2 levels is appropriate. In order for the defedant to qualify for this application the following must be answered in the affirmative: (1) no criminal history point; (2) the sentence did not include an adjustment for terrorism; (3) no violence or credible threats of violence in connection with the offense; (4) no death or serious bodily injury; (5) defendant did not cause substantial financial hardship; (6) not a sex offense; (7) offense not covered by §2H1.1 (offenses involving individual rights); (8) defendant did not receive an adjustment under §3B1.1, and was not engaged in a continuing criminal enterprise as defined in 21 U.S.C. § 848; (9) not a hate crime; (10) possessed, received, purchased, transported, transferred, sold or disposed of a firearm or other dangerous weapon; (11); and, did not receive an adjustment under §3A1.1 (hate crime motivation or vulnerable victim), §3A1.5 (serious human rights offense), or §3B1.1 (aggravating role). Further, the commentary to §5C1.1 indicates that if the defendant is a nonviolent first offender and the applicable guideline range is in Zone A or B of the Sentencing Table, the court should consider imposing a sentence other than a sentence of imprisonment.

Undersigned counsel is certain this Court is aware of the conditions of pretrial confinement at the Chesapeake Detention Facility, and the nature of detention in a facility that

was intended to be a maximum security facility. Mr. Nettina, as well as his parents, will provide observations about the pretrial conditions, and how those conditions seriously impacted Mr. Nettina's mental health. The harshness of pretrial confinement has been considered as a basis for the granting of a variance. In U.S. v. Ortiz, 207 Wl 4208842 (D. N.J. Nov. 27, 2007) the court varied from the Guidelines based on the horrible prison conditions where the defendant was being held. The court had previously heard testimony regarding the conditions of the prison and granted a variance.

<u>PERSONAL HISTORY</u>

The Presentence Report, in paragraphs 57 through 92, accurately reflects the personal, social, educational, physical/mental health, substance abuse and employment history of Mr. Nettina. Undersigned counsel is cognizant of the restraints on the Court's time, and will not reiterate the information set forth in the referenced paragraphs of the Presentence Report, but incorporates by reference the information in the identified paragraphs.

In order to offer the Court a summary of Mr. Nettina from the point of a view of a mental health professional, undersigned counsel is providing the forensic evaluation prepared by Sarah R. Stephens, Psy.D. (See Exhibit 1)

Additionally, accompanying this document the Court will find a number of letters provided in support of Mr. Nettina. The comments of family members, family friends, and personal friends, offer observations of these individuals as they relate to Mr. Nettina's personal history. ( See Exhibit 2). The government portrays Mr. Nettina as a ticking time bomb, ready to explode any minute, and to engage in something he has ever done....an act of physical violence. The accompanying letters offer the Court insight as to the person, who although struggling with

mental health challenges, was a compassionate and supportive individual. Mr. Nettina's parents offer observations of the struggles, as well as the accomplishments, of their son. Mr. Nettina is an accomplished writer, who has had various stories published in a variety of print journalism. Either as a sportswriter for Utah State University, an editor at the Naval Instiute Press, providing a thought provoking article for Military History, or documenting the Papal visit of Pope Francis, Mr. Nettina strived to use his journalistic skills to offer insightful and considerate journalistic works. (See Exhibit 3).

<u>MR. NETTNINA'S SENTENCE</u>

Although Mr. Nettina hopes that he will not be subjected to a lengthy period of incarceration,  he is cognizant of his identified role and the advisory guideline range, the considerations to be offered to the Court by the government in support of its recommended sentence, and the likelihood of the Court imposing some period of incarceration. The defendant believes that a period of incarceration below the advisory sentencing guideline range would satisfy the need for punishment, reflect the seriousness of the offense and promote respect for the law. Additionally, such a sentence would be sufficient to deter criminal conduct. Such a sentence would provide just punishment for the offense.

Over the past several decades state and federal incarceration rates have increased dramatically. As a consequence of more punitive laws and harsher sentencing policies, longer periods of incarceration are imposed by the courts. Sentencing systems and incarceration traditionally have a variety of goals, which as previously noted, include incapacitation, punishment, deterrence and rehabilitation. In recent decades, sentencing policy initiatives have often been enacted with the goal of enhancing the deterrent effect of the criminal justice system.

13

Under the rubric of "getting tough on crime" tougher sentencing policies have been designed to deter with the threat of imposing substantial terms of imprisonment for felony convictions.

While the criminal justice system as a whole provides some deterrent effect, a key question for policy development regards whether enhanced sanctions or an enhanced possibility of being apprehended provide any additional deterrent benefits. Research to date generally indicates that increases in the certainty of punishment, as opposed to the severity of the punishment, are more likely to produce deterrent effects.[1] Criminological research over several decades and in various nations generally concludes that enhancing the certainty of punishment produces a stronger deterrent effect than increasing the severity of punishment. Key findings include the following:

> The Institute of Criminology at Cambridge University was commissioned by the British Home Office to conduct a review of research on major studies of deterrence. Their 1999 report concluded that "...the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects." In addition, in reviewing macro-level studies that examine offense rates of a specific population, the researchers found that an increased likelihood (certainty) of apprehension and punishment was associated with declining crime rates.[2]

> Daniel Nagin and Greg Pogarsky, leading scholars on deterrence, conclude that "punishment certainty is far more consistently found to deter crime than punishment severity, and the extra-logical consequences of crime seem at least as great a deterrent as the legal consequences.[3]

---

[1] Deterence in Criminal Justice. Evaluating Certainty vs. Severity of Punishment, Valerie Wright, Ph.D., The Sentencing Project (Washington, D.C. 2010)

[2] Id.

[3] Id.

Applying the concept that certainty rather than severity has a more deterrent effect to the circumstances of Mr. Nettna's case supports a request that sentence of imprisonment that is below the advisory sentencing guideline range is appropriate to achieve the purposes of sentencing and is otherwise consistent with the statutory factors.

A sentence of imprisonment below the advisory sentencing guideline range is a serious punishment that satisfies the retributive, deterrent, and incarceration goals of sentencing. That sentence will fully convey - indeed, has already conveyed - to Mr. Nettina - that his actions have consequences. . Moreover, such a sentence is sufficient to afford deterrence because Mr. Nettina presents no special problems of recidivism. He is an offender who fully accepts responsibility for his illegal conduct. Additionally, because of the widespread distribution of print media stories relating to Mr. Nettina, there certainly will be collateral consequences that Mr. Nettina will experience as a result of his conviction in this matter.

In sum, a below Guidelines sentence, which is reflective of the variance requested by the by the defendant, is sufficient but not more than necessary to meet the goals of sentencing.

The Court has had the opportunity to review the comments of the family and friends of Mr. Nettina, and to consider his lifelong struggle with mental health issues, and his persistent abuse of alcohol during the time of the communication of the messages that are the subject of this case. Rather than repeat the information that is included in the accompanying documents, undersigned counsel incorporates that information in the request for a reasonable sentence. The government's request for a sentence that is twice the amount of incarceration of their proposed guideline range is not supported by substantive facts that should lead this Court to impose such a harsh sentence. Undersigned can appreciate the fervor that is generated by a review of the

repetitive text messages and communication with his parents. Undersigned counsel suggests that the absence of any positive communicaiton between Mr. Nettina and his parents, who spoke on almost a daily basis, demonstrates that the government seeks to inflame the perception of the Court with a limited number of communicaitons that in no way impacted any individuals other than Mr. Nettina's parents.  What is important to remember is that Mr. Nettina has been housed in protective custody or administrative segregation at the Chesapeake Detention Facility for approximately 7 months. He went from alcohol abuse and inadequately treated mental health into an environment that wears on all those that must await the outcome of their cases. The words exchanged between Mr. Nettina and his parents, and friends, are not a basis for the government's request for such a harsh period of incarceration.

Futher, in considering the government's sentencing memorandu, undersigned counsel believes that the government's request would create an unwarranted disparity. On page 22 of the Presentence Report, the inclusion of Judiciary Sentencing Information reflects that the governement's request is extremely inconsistent with the overall imposition of sentences by the courts in like matters. Additionally, in looking at other cases where individuals have been prosecuted for violation of 18 U.S.C. §875( c) undersigned counsel can find no case that matches or exceeds the type of offense committed by Mr. Nettina. Recently, Joseph Morelli, who was prosecutoed in the Northern District of New York, received a sentence of three months incarceration as a result of leaving a voicemail message for Congresswomn Marjorie Taylor Greene threatening her with physical violence, and violating 18 U.S.C. §875( c). (See Exhibit 4); Recently, in the District of New Hampshire, Allan Poller tendered a guilty plea to a violation of 18 U.S.C. §875 ( c) as a result of leaving a threatening voicemail message for Congressman

Matt Gaetz, threatening to inflict physical injury to Mr. Gaetz. The agreed upon dispositon in the case is a sentence of probation. (See Exhibit 5).  Matthew Lee Comisky was prosecuted in the Southern District of Florida tor engaging in online threats against Lauren Boebert. He received a sentence of 15 months. (See Exhibit 6); Tyler Jay Marshall was prosecuted in the Western District of Oklahoma for using social media to send threatening messages to several govrenemnt officials. Mr. Marshall recevied a sentence of one year and one day of incarceration.(See Exhibit 7).

CONCLUSION

In view of all of the above, the Court is requested to exercise leniency and mercy in its ultimate resolution of this matter.

Respectfully submitted,

_____-s-_____
Joseph Murtha
Rice Murtha & Psoras LLC
1301 York Road, Suite 200
Lutherville, Maryland 21093
(410) 583-6969
jmurtha@ricelawmd.com

Attorney for the defendant
Joshua Michael Weinberg

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of October, 2023, a copy of the

foregoing Defendant's Statement in Aid of Sentencing was filed via CM/ECF and thereby served

upon counsel of record from Office of the United States Attorney for the District of Maryland, 36

S. Charles Street, 4th Floor, Baltimore, Maryland 21201.

_____-s-_____
Joseph Murtha

JM10458